UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TANDI L. MAXWELL,

     Plaintiff,

v.                                                    Case No: 8:19-cv-2458-T-30JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     Plaintiff, Tandi L. Maxwell, seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## BACKGROUND

### A.    Procedural Background

     Plaintiff filed an application for benefits on July 15, 2016. (Tr. 222–30.) The Commissioner denied Plaintiff's claim both initially and upon reconsideration. (Tr. 147–49, 154–58.) Plaintiff then requested an administrative hearing. (Tr. 159–60.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 36–79.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits. (Tr.

18–30.)  Subsequently, Plaintiff requested review from the Appeals Council, which the

Appeals Council denied.  (Tr. 4–7.)  Plaintiff then timely filed a Complaint with this

Court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1955, claimed disability beginning on January 1,

2016.  (Tr. 222–25.)  Plaintiff has an associate's degree.  (Tr. 40.)  Plaintiff's past

relevant work experience includes work as a library clerk and a police department

records clerk.   (Tr. 28, 66, 265.)  Plaintiff alleged disability due to bipolar disorder,

depression, chronic anxiety, and post-traumatic stress disorder ("PTSD").  (Tr. 253.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed

substantial gainful activity since January 1, 2016, the alleged onset date.  (Tr. 20.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined

that Plaintiff had the following severe impairments: schizoaffective disorder-bipolar

type, generalized anxiety disorder, and PTSD.  (Tr. 20.)  Notwithstanding the noted

impairments, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 21–22.)  The ALJ

then concluded that Plaintiff retained a residual functional capacity ("RFC") to

perform a full range of work at all exertional levels, but with the following non-

exertional limitations:

> [S]he is limited to occasional climbing of ramps and stairs,
> but never climb [sic] ladders, ropes or scaffolds; and she

must avoid concentrated exposure to excessive vibration, as well as avoid all exposure to hazardous machinery and unprotected heights.  In addition, the claimant is limited to work that consists of simple, routine, and repetitive tasks in a low-stress job, defined as having only occasional decision making, occasional changes in the work setting, and no production or pace work comparable to an assembly-line, where one worker's pace affects the entire production process.

(Tr. 22–23.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (Tr. 23.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform her past relevant work.  (Tr. 28.)  However, given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as cleaner housekeeper, packager, warehouse worker, and kitchen helper.  (Tr. 29–30.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 30.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a)(4).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide

if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 404.1520(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal

standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff argues that the ALJ erred in the assessment of Plaintiff's RFC because the ALJ failed to give appropriate weight to the medical opinions in the record.  For the reasons that follow, Plaintiff's contentions do not warrant reversal.

### A. Howard A. Goldman, M.D.

Plaintiff first argues that the ALJ erred by rejecting the medical opinion of Dr. Howard A. Goldman.  (Dkt. 22 at 11–15.)  The ALJ's evaluation of Dr. Goldman's opinion is supported by substantial evidence.  (Tr. 26–27.)

A physician's statement reflecting judgments regarding the severity and nature of a claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, RFC, and physical and mental restrictions is an opinion that requires the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).  Absent good cause to the contrary, the ALJ should give a treating source's opinion "'substantial or considerable weight.'"  *Id.* at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1140 (11th Cir. 1997)).  There is good cause to discount a treating source's opinion "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41

(11th Cir. 2004). If the ALJ chooses to disregard the treating physician's opinion, "the ALJ must clearly articulate its reasons." *Id.*; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (stating "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence"). Nevertheless, under the highly deferential substantial evidence standard, if the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. *Bloodsworth*, 703 F.2d at 1239.

Moreover, it is strictly the ALJ's duty to determine the claimant's RFC. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). While opinion evidence is helpful, it is not dispositive. *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (explaining that "the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion"). It is the ALJ's obligation to consider all the evidence of record and to determine the RFC. *See Spivey-Adams v. Acting Comm'r of Soc. Sec.*, No. 3:16–cv–1134–J–PDB, 2017 WL 4297246, at *12 (M.D. Fla. Sept. 28, 2017) (holding that the ALJ "fulfilled her duty under the regulations to assess [plaintiff's] RFC in light of all the evidence in the record").

Here, Dr. Goldman opined that Plaintiff was unable to work more than 15-20 hours per week but capable of handling her own finances. (Tr. 589.) He further opined

that Plaintiff was unable to meet competitive standards for multiple mental abilities and was seriously limited in many different skillsets. (Tr. 590–95.) The ALJ gave no weight to Dr. Goldman's opinion, finding that it was unsubstantiated by treatment notes, influenced by Plaintiff's subjective reporting, and inconsistent with other evidence in the record. (Tr. 26–27.)

Substantial evidence supports the ALJ's decision to give no weight to Dr. Goldman's opinion. First, Dr. Goldman's opinion was conclusory and without support. Dr. Goldman treated Plaintiff from 2004 to 2009, when he stopped accepting her insurance. (Tr. 44.) By the time Plaintiff applied for benefits in July of 2016, Dr. Goldman's office had destroyed her medical records pursuant to office protocol. (Tr. 64–65.) As such, to the extent Dr. Goldman's opinion was based upon his prior treatment of Plaintiff, no available records support his assessment. (Tr. 26.) Additionally, Dr. Goldman's prior treatment of Plaintiff occurred many years before the onset of her disability, such that this treatment was "too remote to be relevant" to Plaintiff's condition at the time of her application. *Potter v. Colvin*, No. 8:12-cv-1031-T-17TGW, 2013 WL 1347282, at *3 (M.D. Fla. Feb. 28, 2013), *report and recommendation adopted,* No. 8:12-cv-1031-T-17TGW, 2013 WL 1339753 (M.D. Fla. Apr. 3, 2013) (affirming ALJ's decision to afford little weight to the opinion of a doctor who treated claimant approximately three years prior to the alleged onset date, concluding such treatment "significantly predated the relevant period"); *see also* 20

C.F.R. § 404.1527(c)(3) (providing that greater weight is given to opinions that are supported by relevant evidence and are well explained).

After 2009, Dr. Goldman did not examine Plaintiff again until August of 2016. After this examination, he submitted a letter to the Social Security Administration explaining his evaluation of Plaintiff's condition. (Tr. 589.) On January 11, 2017, Dr. Goldman also prepared a medical source statement. (Tr. 590–95.) The limited relevant treatment provided by Dr. Goldman weighs against giving greater weight to his opinion. 20 C.F.R. § 404.1520c(3)(i); *see also Ward v. Astrue*, No. 5:08-cv-383(HL), 2009 WL 1241321, at *4 (M.D. Ga. May 4, 2009) (concluding that "the length of the treatment relationship [with claimant's treating physician], only three months within the relevant time period, entitles his deposition testimony to little weight").

The ALJ noted that the file contained "only one office visit/ evaluation" from Dr. Goldman. (Tr. 26.) Plaintiff asserts that this finding is "clearly erroneous" and that the Court therefore must reverse the Commissioner's decision. (Dkts. 22 at 12, 26 at 1–2.) In his medical source statement, Dr. Goldman stated that he treated Plaintiff from 2004 to 2009, and then again on October 10, 2016 and January 11, 2017. Both parties agree that Dr. Goldman made a scrivener's error, such that the reference to October 10, 2016 referred to the August visit. (Dkt. 23 at 9; Dkt. 26 at 1 n.1.) However, Plaintiff argues that the ALJ did not account for both the August and January visits. (Dkt. 26 at 1.) This argument is not supported by the record.

The ALJ stated that Dr. Goldman "appeared to have examined [Plaintiff] once in August 2016, before rendering his January 2017 medical source statement."  (Tr. 26.)  At the hearing, the ALJ inquired of Plaintiff's counsel as follows:

> ALJ: Let me ask – Mr. Loveseky, do we have any of Dr. Goldman's records?  Because all I'm seeing is a single visit in August, of 2016, followed by his medical source statement in January, of 2017.  I don't see any other treatment.
>
> ATTY: The only other thing is I have his treatment, which is Exhibit F-5 – treatment summary for –
>
> ALJ: That's the August 2016.
>
> ATTY: Yes, Your Honor.
>
> ALJ: So all I'm seeing is a single visit, one page, and then a medical source statement rendered about five months later.  But it looked like, from his medical source statement, he said he had treated Ms. Maxwell for years but way back in the past.
>
> CLMT: He destroyed the records.

(Tr. 64.)  Thus, Plaintiff conceded that the record contained only the August 2016 letter and the January 2017 medical source statement.   The ALJ reviewed and evaluated both the August letter and the medical source statement in his decision.  (Tr. 26–27, 589–95.)  As such, the ALJ's findings are supported by the record evidence.

Second, the ALJ found that Dr. Goldman's opinion was derived from Plaintiff's subjective reporting.  (Tr. 27.)  In the August 2016 letter, Dr. Goldman opined that Plaintiff could not work more than 15-20 hours per week.  (Tr. 589.)  The ALJ found

- 10 -

this to be an "unusual opinion," concluding that Dr. Goldman based his opinion on Plaintiff's subjective statements. (Tr. 27.) When he prepared the August letter, Dr. Goldman had not seen or treated Plaintiff in at least five years. Moreover, there are no treatment notes or other records from the August visit to support Dr. Goldman's opinion. As such, substantial evidence supports the ALJ's decision to accord Dr. Goldman's opinion no weight on this basis. *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (finding substantial evidence supported the ALJ's giving limited weight to a medical opinion that was based on the plaintiff's subjective complaints); *Pettaway v. Astrue*, 376 F. App'x 889, 891 (11th Cir. 2010) (finding good cause not to give substantial weight to an opinion where the assessment was based "mainly on [the plaintiff's] subjective complaints").

Third, the ALJ found that Dr. Goldman's opinion was internally inconsistent. (Tr. 27.) Specifically, Dr. Goldman assessed a Global Assessment of Functioning ("GAF") score of 62 for Plaintiff, which the ALJ explained corresponds to "mild symptoms, or some difficulty in social, occupational, or school functioning." (Tr. 27.) However, Dr. Goldman also opined that Plaintiff had marked limitations in activities of daily living and social functioning, and extreme limitations in concentration, persistence, and pace. (Tr. 27, 595.) The ALJ found these opinions to be internally inconsistent, in that such severe limitations would not reflect a GAF score of 62. (Tr. 27.)

- 11 -

Plaintiff contends that a GAF score of 62 is "not fully normal" and is "totally consistent with an opinion that a person is capable of part-time work activity." (Dkt. 26.) Additionally, Plaintiff asserts that ALJ's have "long disregarded GAF scores as not helpful," such that it "would be wrong" to allow the Commissioner to use Plaintiff's GAF score to her detriment. However, the ALJ explicitly noted that he did not give "much weight to the GAF score." (Tr. 27.) Rather, the ALJ explained that the discrepancy between the GAF score and Dr. Goldman's other findings reflect an internal inconsistency, causing him to accord the opinion no weight. Such internal inconsistency is a well-established basis to discount medical opinion evidence. *Saucier v. Comm'r, Soc. Sec. Admin.*, 552 F. App'x 926, 929 (11th Cir. 2014) (finding good cause to give treating physician's opinion less weight where opinions were inconsistent with evidence concerning claimant's activities and other medical opinions). Further, to the extent Plaintiff invites the Court to evaluate whether a GAF score of 62 is consistent with part-time work, the Court declines to substitute its judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].").

Fourth and finally, Dr. Goldman's opinion was also externally inconsistent with other evidence in the record. (Tr. 27.) Specifically, Plaintiff testified at the hearing that she worked part time since her alleged onset date (Tr. 41), provided daily care for three horses and a potbellied pig (Tr. 50, 63), previously attended Bible study and church, at least occasionally, considered volunteering at her church thrift shop in

the future (Tr. 59), and managed the finances for her horse boarding services (Tr. 63). The ALJ found that such activities were inconsistent with Dr. Goldman's assessment of Plaintiff's social and functional limitations.  (Tr. 27.)  Additionally, as noted by the ALJ, Dr. Goldman's opinions were inconsistent with the treatment notes of Plaintiff's then-treating counselor, Alecia Lidge, P.A.  (Tr. 27.)  At the time of Dr. Goldman's assessment of Plaintiff, P.A. Lidge reported that Plaintiff's mood was generally stable, with some anxiety, and that Plaintiff had good memory, insight, orientation, and judgment, with symptoms rated by Plaintiff at a "3" on a scale of 1-10.  (Tr. 1357, 1359, 1361.)

In sum, the ALJ thoroughly considered Dr. Goldman's opinion, as well as the record as a whole, including medical and non-medical evidence.  The ALJ adequately articulated specific reasons, supported by substantial evidence of the record, to assign the opinion no weight.  *Winschel*, 631 F.3d at 1179.  As such, this Court may not disturb the ALJ's finding.  *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 440 (11th Cir. 2011) ("As our limited review precludes us from reweighing the evidence, we will find no reversible error when the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, if those reasons are supported by substantial evidence.").

## B. Jennifer H. Mendoza, Ph.D.

Plaintiff further contends that the ALJ failed to articulate a basis to exclude certain portions of the opinion of Dr. Jennifer H. Mendoza from Plaintiff's RFC. (Dkt.

- 13 -

22 at 22–23.) The ALJ's evaluation of Dr. Mendoza's opinion is supported by substantial evidence.

Dr. Mendoza, an examining and treating physician, provided a psychological evaluation of Plaintiff, dated April 17, 2018. (Tr. 1368–73.) Dr. Mendoza opined that Plaintiff had moderate limitations in her ability to understand and carry out simple instructions and to make judgments on simple work-related decisions. Further, Dr. Mendoza noted that Plaintiff had marked limitations with respect to complex instructions and work-related decisions. (Tr. 1371.) Dr. Mendoza opined that Plaintiff could interact appropriately with the public, supervisors, and co-workers, but that she had a moderate limitation in responding to changes in a work setting. (Tr. 1372.) Additionally, Dr. Mendoza explained that Plaintiff was triggered by anxiety and easily overwhelmed, which could reduce her concentration and persistence. (Tr. 1371–72.)

The ALJ gave Dr. Mendoza's opinion significant weight because Dr. Mendoza treated Plaintiff over 52 sessions, spanning three and a half years, close in time to Plaintiff's alleged onset date. (Tr. 26, 354–74, 1369.) The ALJ also noted that Dr. Mendoza was highly qualified as a licensed psychologist and recently evaluated Plaintiff. (Tr. 26.)

The assigned RFC reflected the limitations found by Dr. Mendoza. The ALJ limited Plaintiff to "simple, routine, repetitive tasks in a low stress job, defined as having only occasional decision making, occasional changes in the work setting, and no production or pace work." (Tr. 23.) The ALJ thus accounted for the moderate and

marked limitations assessed by Dr. Mendoza, as well as Plaintiff's tendency to become overwhelmed in the workplace.  Indeed, the ALJ discounted only a portion of Dr. Mendoza's opinion in which she opined that Plaintiff had no social limitations.  The ALJ found that the record as a whole demonstrated a mild social limitation.  (Tr. 26.)

Plaintiff suggests that the ALJ should have specifically discussed and evaluated every finding of Dr. Mendoza.  For example, Plaintiff asserts that the RFC does not account for Dr. Mendoza's finding that Plaintiff "was unable to do more than one serial seven subtraction and needed extra encouragement and extra time to do only three serial four subtractions."  (Dkt. 22 at 22.)   The Eleventh Circuit does not require this level of specificity.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."); *see Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 969 (11th Cir. 2015) ("[W]hile the ALJ is required to state the weight afforded to each medical opinion . . . the ALJ is not required to discuss every piece of evidence.") (internal citation omitted); *Randolph v. Astrue*, 291 F. App'x 979, 982 (11th Cir. 2008); *cf. Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (stating that "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors").  The ALJ carefully considered Dr. Mendoza's opinion and articulated a basis to discount a portion of her opinion regarding Plaintiff's social limitations, which was supported by substantial evidence in the record.

To the extent Plaintiff argues the ALJ improperly accorded significant weight to Dr. Mendoza's opinion, while rejecting the opinion of Dr. Goldman, this assertion is not supported by the record. (Dkt. 22 at 12–13.) Plaintiff maintains that "there is nothing significant to distinguish" the treatment of Dr. Mendoza and Dr. Goldman. To the contrary, as the ALJ explained, Plaintiff's on-going treatment with Dr. Goldman ended in 2009, at least five years before Plaintiff's alleged onset date. Dr. Mendoza, on the other hand, treated Plaintiff for the three and half years immediately preceding the onset of her disability. Moreover, the ALJ was able to review Dr. Mendoza's treatment notes, spanning 52 sessions, and compare them to her medical source statement to evaluate the opinion for internal consistency and support. Because Dr. Goldman's records were not provided, the ALJ was unable to undertake a similar review. As such, the ALJ's decision to accord different weight to these opinions is well supported by the record.

### C. Alecia Lidge, P.A.

Plaintiff also asserts that the ALJ committed reversible error by giving little weight to the opinion of Plaintiff's most recent treating provider, Alecia Lidge, P.A.[1] P.A. Lidge treated Plaintiff over the course of eleven sessions, from June 22, 2016 through April 3, 2018. (Tr. 1344–66.) She also provided a Mental Impairment Questionnaire, dated January 31, 2017. (Tr. 596–601.) In the Questionnaire, P.A.

---

[1] The Commissioner notes that pursuant to 20 C.F.R. § 416.913(a), P.A. Lidge is not a "medical source" because she is a physician's assistant, rather than a medical doctor. (Dkt. 23 at 14 n.6.) However neither party asserts that the ALJ erred by evaluating P.A. Lidge's opinion as a medical source opinion and the Court therefore does not reach this issue.

Lidge opined that Plaintiff was seriously limited or unable to meet competitive standards in all skills and aptitudes listed. P.A. Lidge also stated that Plaintiff experienced three episodes of decompensation within a twelve-month period, each episode lasting for two or more weeks.[2] (Tr. 598–600.) The ALJ accorded little weight to this opinion, finding that it was internally inconsistent and not supported by the record evidence. (Tr. 27.)

Substantial evidence supports the ALJ's decision to give little weight to P.A. Lidge's assessment. Specifically, as the ALJ noted, P.A. Lidge's opinion of Plaintiff's social functioning limitations conflicted with her own treatment notes, which indicated that Plaintiff was stable with her medication and self-reported her symptoms consistently at a "3" on a scale of 1-10. (Tr. 1344–62.) Additionally, P.A. Lidge's opinion that Plaintiff was seriously limited in her ability to adhere to basic standards of neatness and cleanliness was inconsistent with P.A. Lidge's repeated description of Plaintiff's appearance as well-groomed or casual during treatment sessions. (Tr. 27–28, 1344, 1346, 1348, 1350, 1352, 1354, 1357, 1359, 1361, 1363, 1366.) *See Fernandez v. Comm'r of Soc. Sec.*, 646 F. App'x 789, 792 (11th Cir. 2016) (finding good cause to give limited weight to an opinion that was inconsistent with the provider's own medical records); *Phillips*, 357 F.3d at 1241.

---

[2] The Court notes that the Mental Impairment Questionnaire provided by P.A. Lidge inquired about episodes of decompensation in two sections, Questions 11 and 12. In response to Question 11, P.A. Lidge checked the box indicating Plaintiff had three episodes of decompensation within twelve months. In response to Question 12, she did not check the box (Question 12(A)(1)) indicating Plaintiff had these episodes. (Tr. 600.)

Further, the ALJ found P.A. Lidge's notation that Plaintiff had three episodes of decompensation[3] to be unsupported by the record.  (Tr. 27.)  Upon review of the treatment notes, P.A. Lidge did not explain in her notes that she believed Plaintiff was experiencing decompensation.  Further, the treatment notes reveal that from August 17, 2016 to April 3, 2018, Plaintiff self-reported her symptoms at a "3" on a scale of 1-10 at every session.  (Tr. 1344–61.)  Plaintiff self-reported her symptoms as fairly consistent throughout her entire treatment with P.A. Lidge, first reporting herself at a "4" on June 22, 2016, then at a "1" on July 20, 2016, and then at a "3" consistently thereafter.  (Tr. 1344–66.)

Plaintiff contends that the ALJ applied an incorrect definition of "decompensation" and imposed a hospitalization requirement.  (Dkt. 22 at 20.)  This is not reflected in the ALJ's decision.  (Tr. 18–35.)  Further, to the extent Plaintiff asserts that P.A. Lidge saw Plaintiff decompensate at multiple times over the course of treatment, Plaintiff does not point to any specific evidence of decompensation in P.A. Lidge's treatment notes.  As such, Plaintiff's conclusory assertions do not warrant reversal of the ALJ's well-articulated analysis of the record evidence.  *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49–50 (11th Cir. 2012) (reiterating that the Court

---

[3] The Mental Impairment Questionnaire defined episodes of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace.  Episodes of decompensation may be demonstrated by an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."  (Tr. 600.)

"may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner") (internal punctuation and citation omitted).

In sum, the ALJ set forth specific reasons, supported by substantial evidence, for giving little weight to P.A. Lidge's opinion. *See Evans v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 521, 525 (11th Cir. 2014). The inconsistencies noted between P.A. Lidge's opinion and treatment notes, as well as the record as a whole, constitute good cause to give the opinion less weight. Thus, this Court may not disturb the ALJ's findings. *Carson*, 300 F. App'x at 743 ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, we do not disturb the ALJ's refusal to give the opinion controlling weight.").

### D. Non-examining consultants

Plaintiff further argues that the ALJ improperly relied upon the opinions of the non-examining consultants. (Dkt. 22 at 24.) According to Plaintiff, such evaluations cannot create substantial evidence to support the ALJ's determination that Plaintiff is not disabled.

The ALJ may consider the opinions of non-examining consultants if the opinions of treating providers are given proper weight in accordance with the record. *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (holding that the ALJ properly credited reports of non-examining, non-treating physicians after finding good cause to discount the opinion of the plaintiff's treating physician). The ALJ reviewed the

opinions of three consultants, evaluated the extent to which the opinions were consistent with the medical and non-medical evidence, and articulated specific reasons to accord moderate or moderate-to-significant weight to each.  (Tr. 26.)

To the extent Plaintiff asserts the ALJ erroneously credited these opinions and not those of Dr. Goldman and P.A. Lidge, as explained above, the ALJ set forth good cause to accord those opinions less than controlling weight.  The ALJ's evaluation of each opinion was well-reasoned, thoroughly explained, and reflected his consideration of the record as a whole.  *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (finding that the ALJ properly gave more credence to the opinion of a consultant than a treating physician's inconsistent findings); *see also Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902–03 (11th Cir. 2012) (holding the ALJ properly gave significant weight to the opinion of the non-examining physician because it was consistent with the record evidence).  The ALJ's findings are thus supported by substantial evidence and this Court may not disturb them.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED** that:

1.  The decision of the Commissioner be **AFFIRMED**.

2.  The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on December 28, 2020.


_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE



## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


Copies furnished to:
The Honorable James S. Moody, Jr.
Counsel of Record